Gregory B. Collins (*pro hac vice application to be filed*)
Eric B. Hull (# 291167)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorney for Plaintiff
ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ThermoLife International LLC, an Arizona limited liability company,<br><br>    Plaintiff,<br>v.<br><br>https://ronkramermusclebeach.wordpress.com/, an Internet domain name; https://ronkramermusclebeach.wordpress.com/author/musclebeachkramer/, an Internet domain name.<br><br>    Defendants. | Case No. 5:15-cv-01616-HRL<br><br>**PLAINTIFF'S OBJECTION TO APPLICATION OF PAUL ALAN LEVY TO BE APPOINTED GUARDIAN *AD LITEM***<br><br>*Assigned to the Hon. Howard R. Lloyd* |

This case involves only discreet legal issues under the Anti-cybersquatting Consumer Protection Act (ACPA). The Muscle Beach Domains plainly use Plaintiff's registered trademark (and Plaintiff's president's name) in the URLs. Plaintiff has followed the ACPA and sent notice of this suit through every possible channel traceable to the Defendants—the party acting as the domain name authority, the only email address

provided,[1] and as comments on the Domains themselves. Congress structured the *in rem* provisions of the ACPA to address the very situation before the Court.

Accordingly, Plaintiff objects to the April 21, 2015 Letter from Paul Alan Levy seeking appointment as guardian *ad litem* of the Muscle Beach Domains (the "Levy Letter") on several grounds. As an initial matter, the request is premature. The Court has not even ruled on Plaintiff's Motion for Use of Alternative Service of Process or set a date by which the Defendant Domain Names must respond. It is still possible that a representative for the Muscle Beach Domains will appear in the case. Furthermore, to the extent the Defendants do not appear, it is ostensibly by design. The Domains were registered using an email address created to avoid legal process. In addition, the Levy Letter covers much of the same authority the Court will address in Automattic Inc.'s Motion to Intervene.

More importantly, as stated above, Mr. Levy's representation is not necessary. The Court will provide ample protection to the anonymous author's rights. Ninth Circuit case law on the ACPA—law cited with approval in Mr. Levy's letter—and the ACPA itself provide ample guidance for the Court to make an appropriate determination in this case. Contrary to Mr. Levy's fair use concerns, his own cited case law holds, "[t]he use of a domain name in connection with a site that makes a noncommercial or fair use of the mark does not necessarily mean that the domain name registrant lacked bad faith." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680-81 (9th Cir. 2005) (quoting *Coca–Cola Co. v. Purdy*, 382 F.3d 774, 778 (8th Cir. 2004)).

Not surprisingly, Mr. Levy cites no case law in which he—or anyone else—was appointed guardian *ad litem* in an *in rem* proceeding under the ACPA. However, even if the Court believes that a guardian *ad litem* is prudent, Mr. Levy is not an appropriate

---

[1] Notably, the creator of the Muscle Beach Domains registered the URLs providing only an anonymous email address as his/her contact information—and the email service used specifically solicits customers seeking to avoid legal process: "This is a great security advantage for our customers since it makes it more troublesome if not impossible for any prosecutors to start a legal dispute."

candidate. Mr. Levy has already contacted Plaintiff's counsel seeking comment on an article he is writing about this case. Furthermore, in his Letter Mr. Levy misstates the "fair use" law as it applies to the ACPA.

For all of the above stated reasons, and as described more fully below, Plaintiff objects to Mr. Levy's application to be appointed guardian *ad litem*.

## I.   MR. LEVY'S REQUEST IS PREMATURE.

When the anonymous author(s) of the Muscle Beach Domains registered their URL with Automattic, they intentionally left as little information behind as possible. The only ways to contact the author(s) were through: 1) an email address registered with a company that caters to users seeking to avoid legal process; 2) the Domains themselves; and 3) through Automattic, the company that acted as the domain authority. Plaintiff provided notice to the owners of the Muscle Beach Domains through all three channels. Notably, the *in rem* provisions of the ACPA anticipate the service issues present in this case and authorize alternative process for this very situation. Accordingly, before the Court considers Mr. Levy's application to act as guardian *ad litem*, it should first rule on the Request for Alternative Service and allow the anonymous author(s) time to appear on their own behalf.

In addition, since Mr. Levy filed his application with the Court, Automatic Inc., the company that acted as the domain name authority in this case, has sought to intervene.[2] In its Motion to Intervene, Automattic raises the same issues raised by Mr. Levy regarding fair use and cites much of the same legal authority. Accordingly, Mr. Levy's positions will be briefed in the case.

For both of these reasons, the Court need not consider Mr. Levy's application at this time.

## II.   MR. LEVY'S REQUEST IS UNNECESSARY.

The ACPA and extensive case law specifically state the discreet legal issues the Court should consider in an *in rem* proceeding against a domain name. Despite the

---

[2] The distribution list on Mr. Levy's letter included Automattic's General Counsel.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

proliferation of ACPA lawsuits, Mr. Levy cites no case law, and Plaintiff has been unable to locate any case law, in which a guardian *ad litem* was appointed in an *in rem* proceeding under the ACPA. The reason is simple—Mr. Levy's concerns are unfounded. The Court is more than capable of assessing the legal issues, including any tangential First Amendment issues, and making an appropriate ruling.

In his letter, Mr. Levy cites *Bosley* for the assertion that Plaintiff's case "appears to fly in the face of a Ninth Circuit decision that the office litigated pro bono on behalf of an individual who had similarly created a non-commercial website that criticized the trademark holder."[3] Considering that Mr. Levy litigated the *Bosley* case, he should recognize that the Ninth Circuit held that a website's content is not determinative in an ACPA case: "The district court dismissed Bosley's ACPA claim for the same reasons that it dismissed the infringement and dilution claims—namely, because Kremer did not make commercial use of Bosley's mark. However, the ACPA does not contain a commercial use requirement, and we therefore reverse." *Bosley*, 403 F.3d at 680.

The Ninth Circuit explained, "Allowing a cybersquatter to register the domain name with a bad faith intent to profit but get around the law by making noncommercial use of the mark would run counter to the purpose of the Act. '[T]he use of a domain name in connection with a site that makes a noncommercial or fair use of the mark does not necessarily mean that the domain name registrant lacked bad faith.'" *Id*. at 680-81 (quoting *Coca–Cola Co. v. Purdy*, 382 F.3d at 778 & citing H.R.Rep. No. 106–412 at 11 (1999) ("This factor is not intended to create a loophole that otherwise might swallow the bill, however, by allowing a domain name registrant to evade application of the Act by merely putting up a noninfringing site under an infringing domain name.")). As further support, the Ninth Circuit noted that "one of the nine factors listed in the statute that courts must consider is the registrant's 'bona fide noncommercial or fair use of the mark in a site accessible under the domain name.' 15 U.S.C. § 1125(d)(1)(B)(i)(IV). This

---

[3] Automattic also cites *Bosley* for the same misplaced principle.

1  factor would be meaningless if the statute exempted all noncommercial uses of a
2  trademark within a domain name." *Id*. at 681.[4]

3  The Ninth Circuit concluded that rather than focusing on the commercial use of
4  the infringing website, "the court should confine its inquiry to the elements of the ACPA
5  claim listed in the statute, particularly to whether [the author] had a bad faith intent to
6  profit from his use of [the markholder's] mark in his site's domain name." *Id*. at 681. The
7  Court does not need to appoint a guardian *ad litem* for the Muscle Beach domains to
8  conduct this inquiry.

### III. THE CASE WHERE MR. LEVY ACTED AS GUARDIAN *AD LITEM* DEMONSTRATES WHY IT IS NOT NECESSARY IN THIS CASE.

11  Mr. Levy cites only a single case in which he has been admitted as guardian *ad*
12  *litem* and that case had far different circumstances than this case. There, a pornography
13  producer sued 670 individuals as John Doe defendants, alleging copyright infringement.
14  *Mick Haig Prods. E.K. v. Does 1-670*, 687 F.3d 649, 650 (5th Cir. 2012). The producer
15  "then sought permission to expedite discovery in order to subpoena the Does' ISPs to
16  disclose their names and contact information . . . ." *Id*. But before the court could rule,
17  the producer's attorney sought discovery from the ISPs and contacted some of the John
18  Does defendants. Mr. Levy was appointed guardian *ad litem* to protect the interests of the
19  John Doe defendants. *Id*. But importantly, the producer's attorney had previously
20  employed this discovery tactic "of suing anonymous internet users for allegedly

---

[4] Other indicia of bad faith relevant to this case include: "(I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; . . .(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; . . . (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct . . . ." 15 U.S.C.A. § 1125(d)(1)(B)(i).

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars—a tactic that he has employed all across the state and that has been replicated by others across the country." *Id*. at 652.

Even though the producer dropped the case, litigation continued on sanctions issues related to the producer's attorney's conduct. No similar interest exists in this case.

### IV. MR. LEVY IS NOT AN APPROPRIATE GUARDIAN *AD LITEM*.

Even if the Court concludes a guardian *ad litem* is necessary, it should not appoint Mr. Levy. In his letter to the Court and in emails with Plaintiff's counsel, Mr. Levy has made it clear that he plans on focusing the Court's attention on First Amendment issues that are tangential—at best—to the merits of Plaintiff's Complaint. To that end, soon after he sent his letter to the Court, Mr. Levy contacted Plaintiff's counsel via email seeking a comment for an article he is writing that would "identify the statements [on the Muscle Beach Domains] that are false, and point to evidence on the issue of falsity . . . ." (*See* **Exhibit 1**, email correspondence between P. Levy and E. Hull (4/24/15).) As *Bosley* plainly demonstrates, Mr. Levy's cited "fair use" concerns are not determinative of any issue in this case.

Importantly, *Bosley* does not represent an isolated example of this problem. While Mr. Levy professes to have expertise in this area of law, his letter misrepresented two other rulings on Lanham Act cases as relevant to the ACPA, stating "the use of a trademark in the domain name of a non-commercial web site that comments on the trademark holder does not transgress the Lanham Act so long as the underlying web site is not confusing about being sponsored by the trademark holder." (citing *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005)[5] & *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003)). This passage from the letter highlights the issues of admitting Mr. Levy as guardian *ad litem*—in order to advance his agenda he simply ignores that Plaintiff's

---

[5] *Lamparello* represents another case similarly misstated in Automattic's Motion to Intervene.

Keresmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

claim is under the ACPA, not a Lanham Act claim—a distinction specifically cited in the case law.

For example, the Fourth Circuit addressed this distinction in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423 (4th Cir. 2011). There, the defendant "argue[d] that, under our precedent in *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005), we must 'determine whether a likelihood of confusion exists by examin[ing] the allegedly infringing use in the context in which it is seen by the ordinary consumer.' . . . However, the court in *Lamparello* made that statement in the context of trademark infringement, not the ACPA." *Id*. at 436-37 (quoting *Falwell*, 420 F.3d at 316) (internal quotations omitted). The Fourth Circuit then distinguished *Lamparello* using the same Eighth Circuit case that the Ninth Circuit cited in *Bosley*: "'[t]he inquiry under the ACPA is ... narrower than the traditional multifactor likelihood of confusion test for trademark infringement.'" *Id*. (quoting *Coca–Cola Co. v. Purdy*, 382 F.3d at 783).

Similarly, in *Taubman*, the Sixth Circuit specifically withheld judgment on the ACPA claims: "Taubman sought the injunction under other claims too, including violation of the Anticybersquatting Act. However, the district court granted the injunction based only on the Lanham Act claim. Accordingly, that is the only issue before this Court." 319 F.3d at 773 n.2.[6] Even there, however, the Sixth Circuit made an important point that supports Plaintiff's claim. In addressing whether "cybergriping sites" are commercial, it made a distinction based on whether "defendant used the plaintiff's trade name as a domain name, without the qualifying moniker 'sucks,' or any other such addendum to indicate that the plaintiff was not the proprietor of the website. In contrast, 'taubmansucks.com' removes any confusion as to source." *Id*. at 777-78. Here, the Muscle Beach Domain URLs contain no modifier; they simply use Plaintiff's mark and its President's name. Accordingly, Mr. Levy's concerns regarding fair use are irrelevant.

---

[6] Automattic appropriately left *Taubman* out of its Motion to Intervene.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

## V. CONCLUSION.

At bottom, it is simply too early to deal with Mr. Levy's application to act as guardian *ad litem* of the Muscle Beach Domains. The Court should first set a date by which the Domains must answer the Complaint and address Automattic's Motion to Intervene that covers the same issues raised in Mr. Levy's letter. However, even after the Court makes those initial rulings, Mr. Levy should not be admitted as guardian *ad litem*. Such a ruling would be unprecedented in an ACPA *in rem* case and is wholly unnecessary. Even Mr. Levy's own case law demonstrates that his First Amendment concerns are either overstated or wholly inapplicable in an ACPA case.

RESPECTFULLY SUBMITTED this 30th day of April, 2015.

KERCSMAR & FELTUS PLLC

By: */s/Eric Hull*
    Gregory B. Collins
    (*pro hac application to be filed*)
    Eric B. Hull
    7150 East Camelback Road, Suite 285
    Scottsdale, Arizona 85251
    *Attorneys for ThermoLife International LLC*

## CERTIFICATE OF SERVICE

I certify that on April 30, 2015 I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009-101
plevy@citizen.org

Melinda M. Morton
Procopio, Cory, Hargreaves &Savitch LLP
1020 Marsh Road, Suite 200
Menlo Park, California 94025
mindy.morton@procopio.com


By: */s/Eric Hull*

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

9
5:15-cv-01616-HRL     Plaintiff's Objection To Application Of Paul Alan Levy
To Be Appointed Guardian *Ad Litem*