MELINDA M. MORTON, SBN 209373
mindy.morton@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
1020 Marsh Road, Suite 200
Menlo Park, CA  94025
Telephone: 650.645.9000
Facsimile:  619.235.0398

Attorney for Non-Party
AUTOMATTIC INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ThermoLife International, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>https://ronkramermusclebeach.wordpress.com/, an Internet domain name;<br>https://ronkramermusclebeach.wordpress.com/author/musclebeachkramer/, an Internet domain name,<br><br>Defendants. | Case No. CV15-01616 HRL<br><br>**NON-PARTY AUTOMATTIC INC.'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date:  June 2, 2015<br>Time:  10:00 am<br>Judge:  Magistrate Judge Howard R. Lloyd<br>Ctrm:    2, 5th Fl.<br><br>Complaint filed:  April 8, 2015<br>Trial date:  none set |

## I. INTRODUCTION

Much of ThermoLife's Opposition addresses the merits of its case, but the motion before this Court is a motion to intervene, and not a motion to dismiss.[1] The sole question before this Court is whether Automattic meets the standard to intervene as a matter of right or permissively. Automattic respectfully submits that the answer to this critical question is "yes."

ThermoLife alleges that the Muscle Beach Domains violate the ACPA and further alleges that Automattic is a "domain name authority." Automattic denies these allegations in its proposed Answer and seeks a judgment "declaring that the Muscle Beach Domains do not violate 15 U.S.C. § 1125(d)." These two issues are at the heart of Plaintiff's Complaint. Automattic seeks to intervene to protect its property rights in the domain names at issue as well as to protect its business and its users. These interests are "protectable" under Rule 24 and Ninth Circuit case law, and therefore Automattic's motion should be granted.

## II. ARGUMENT

### A. Automattic Has a Significant Protectable Interest in Protecting its Property Interest in its Domain Name and in Protecting the Free Speech Rights of its Users

Plaintiff mischaracterizes Automattic's interest in this litigation and the relief sought by Automattic in its Counterclaim in Intervention. Automattic's interest in this litigation is in protecting its property interest in its domain name and protecting the free speech rights of its users.[2] These interests are "significantly protectable" under Rule 24(a). As explained by the Ninth Circuit in *S. Cal. Edison Co. v. Lynch*,

///

---

[1] Automattic disagrees with ThermoLife's arguments in Section I of its Opposition and addressed them in its Opening Brief. As these arguments do not go to the merits of Automattic's motion to intervene, Automattic will not further refute them other than to cite to the only case either party has found to directly address the issue of third-party domains, *GoForIt Entm't, LLC v. DigiMedia.com L.P.,* 750 F.Supp.2d 712 (N.D. Tex. 2010).

[2] ThermoLife claims that Automattic does not have such an interest, stating that the Muscle Beach Domains violate the Automattic Terms of Service. (Opp. At 1.) First, Automattic denies that the Muscle Beach Domains violate its Terms of Service. Second, Automattic objects to ThermoLife's exhibits, including the Terms of Service, as the documents are not properly authenticated. Pursuant to L.R. 7-5, all exhibits attached to the Opposition should be stricken.

> An applicant has a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims. The relationship requirement is met if the resolution of the plaintiff's claims actually will **affect the applicant**. The "interest" test is not a clear-cut or bright-line rule, because **no specific legal or equitable interest need be established**. Instead, **the "interest" test directs courts to make a practical, threshold inquiry**, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.

307 F.3d 794, 803 (9th Cir.2002) (emphasis added). "The 'interest test' is basically a threshold one, rather than the determinative criterion for intervention, because the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task of limiting extension of the right to intervene. *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Plaintiff's Opposition suggests that there is a very high bar for intervention as of right. However, *United States v. Alisal Water Corp.*, a case quoted by Plaintiff, explained, "[i]n determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." 370 F.3d 915, 919 (9th Cir. 2004). Automattic has a significantly protectable interest under this broad and flexible standard.

Automattic has a legally protected property interest in the registered domain name. *See Kremen v. Cohen,* 337 F. 3d 1024, 1029-30 (9th Cir. 2003) (domain names are property); *Media Lab, Inc. v. Collis,* No. C08-04732 HRL, 2010 WL 3893582, at *5 (N.D. Cal. Sept. 30, 2010) (citing *Kremen,* stating "Under California law, an internet domain name is property."). A property right is a "protectable interest" that will support a motion for intervention as of right. *N. California River Watch v. Fluor Corp.*, No. 10-CV-05105-MEJ, 2014 WL 3385287, at *16 (N.D. Cal. July 9, 2014). Automattic also has a direct and significant interest in protecting the free speech rights of its users. Likewise, there is a relationship between Automattic's interest and Plaintiff's claims because a decision in this case will have a significant impact on Automattic and all of its users including the Muscle Beach user. *See In re Estate of Marcos*, 536 F.3d 980, 2008 WL 2924977, at *3 (9th Cir. July 31, 2008) ("The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant.").

The potential harm to Automattic and its users here is exactly the type of harm that led the court in *Select Retrieval, LLC v. ABT Electronics* to conclude that Adobe Systems had a significant protectable interest in intervening as a matter of right. Case No. 11-C-03752, 2013 WL 6576861 (N.D. Ill., Dec. 13, 2013). In that case, Adobe sought to intervene in a patent infringement case against two of its customers. The court concluded that Adobe had a significant protectable interest in determining whether its customers were infringing on the patent. *Id*. at *2. The Court also concluded that Adobe's ability to defend its technology would be compromised if not permitted to intervene. *Id*. According to the Court, this was underscored by the fact that Adobe (through its customers) would be subject to inconsistent judgments regarding whether its technology infringes the patent and would be forced to proceed inefficiently in piecemeal fashion even though the same technology was at issue in the various cases. *Id*.

Just as in *Select Retrieval*, Automattic has an interest in protecting not only its user with the third-level domain "ronkramermusclebeach," but all of its users. A judicial determination that the Muscle Beach Domains are covered by the ACPA could chill speech and affect many of Automattic's users. Moreover, these interests are not adequately represented. The user has not appeared or been served, and Plaintiff objected to the appointment of a guardian ad litem for the Muscle Beach Domains. (*See* Dkt. Number 9.) Even if the user were to appear, he or she would likely lack the expertise and incentive to defend Automattic's platform and technology. *See Ancora Technologies, Inc. v. Toshiba Am. Info. Sys., Inc.*, No. SACV080626AGMLGX, 2008 WL 4326788, at *1 (C.D. Cal. Sept. 22, 2008) ("Applicant's interest is not adequately represented by the existing Defendants because none has comparable expertise or incentive to defend Applicant's own software and technology").

**B.     Automatic Seeks Declaratory Relief That The Muscle Beach Third-Level Domain Does Not Violate 15 U.S.C. § 1125(d)**

Plaintiff also mischaracterizes the relief sought by Automattic in its Counterclaim in Intervention. Automattic does not seek an "advisory opinion." Rather, Automattic seeks judgment "declaring that the Muscle Beach Domains do not violate 15 U.S.C. § 1125(d)." (*See* Morton Decl., (Dkt. No.7-1, Ex. A, Proposed Counterclaim, Prayer ¶ C.) Automattic's proposed

3

1  Counterclaim is directly related to Plaintiff's Complaint, which seeks "a preliminary and
2  permanent injunction requiring the domain name registrar to transfer" the Muscle Beach Domains.
3  (Complaint, Dkt. No. 1, at Prayer, ¶ A.)  As discussed above, Automattic has a significant
4  protectable interest in seeking this relief.  Automattic seeks to intervene to protect its interests that
5  are directly at issue in this litigation, and its interests in this case go far beyond merely obtaining a
6  "favorable precedent" – it seeks to protect its property rights in its domain name as well as the free
7  speech rights of its users.

### C. Chilling Speech Harms Automattic *And* Its Users

As discussed in the opening brief, Automattic's business is based on empowering speakers. Lawsuits that seek to silence speakers chill speech, and when such lawsuits are filed against Automattic's property (the domain names) and are based on user conduct, Automattic and its users are harmed.  "The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity."  47 U.S.C. § 230(a)(3).  The United States has a long history of protecting anonymous and even hurtful speech.  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995).  "[T]he point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful."  *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 574 (1995).

Plaintiff's Opposition claims that *Lamparello v. Fallwell* is "inapposite."  (Opp. At 11.) The Opposition cites to another case, *Newport News Holdings Corp. v. Virtual City Vision,* that Plaintiff claims holds that "*Lamparello* did not apply to the ACPA."  However, *Newport News* merely states that the "likelihood of confusion" test in *Lamparello* was made "in the context of trademark infringement, not the ACPA."  *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 436 (4th Cir., 2011).  It is true that the "likelihood of confusion" cite is in the portion of *Lamparello* that relates to trademark infringement.  *See Lamparello v. Falwell,* 420 F.3d 309, 316 (4th Cir. 2005).  Automatic did not cite to this portion in its Opening Brief.  (*See* Opening Brief at 8.)  Instead, Automattic cited to the portion of *Lamparello* that does concern the ACPA. The relevant portion of *Lamparello* states that the ACPA "was not intended to prevent

4

'noncommercial uses of a mark, such as for comment, criticism, parody, news reporting, etc.', and thus they 'are beyond the scope' of the ACPA." *Lamparello,* 420 F.3d at 318-19; *see also Aviva USA Corp. v. Vazirani,* 902 F.Supp.2d 1246, 1269 (D. Az. 2012) ("Importantly, because the Website was not commercial, it was used only to criticize Aviva, and the Defendants never made any attempt to sell the domain names for profit, Defendants' actions do not fall within the scope of the ACPA.").

### D.  The Court Should Allow Permissive Intervention

Automattic also satisfies the requirements for permissive intervention. Plaintiff's opposition cites the three requirements for permissive intervention and then proceeds to disregard them and apply its own standard. As discussed above, Automattic has a protectable interest in this litigation, but this is not a requirement for permissive intervention. As Plaintiff points out, Automattic need only establish: (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997).

Here, as set forth in Automattic's [Proposed] Answer and Counterclaim, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1338 and/or 1367 because the action arises under 15 U.S.C. § 1125(d). Venue is proper because Plaintiff brought suit in this district. As discussed in Automattic's motion to intervene, this request is timely given that Automattic seeks leave to intervene less than three weeks after the complaint was filed. Finally, Automattic's claim for declaratory relief shares the legal question with the main action regarding whether "ronkramermusclebeach," a third-level domain, violates 15 U.S.C. § 1125(d).

Plaintiff does not dispute that Automattic's proposed Answer in Intervention meets the Ninth Circuit test for permissive intervention.[3] Nor does Plaintiff dispute that Automattic's proposed Counterclaim meets the test. Plaintiff instead argues (1) that there is no case or

---

[3] The Opposition essentially ignores Automattic's proposed Answer, and as Plaintiff has not presented any argument as to why the Answer doesn't meet the test for permissive intervention, Automattic respectfully requests that the Court, at a minimum, grant Automattic's motion and allow it to file the Answer.

5
NON-PARTY AUTOMATTIC INC.'S REPLY ISO MOTION TO INTERVENE          CV15-01616 HRL
2241687

controversy; (2) that Automattic's proposed Counterclaim "expand[s] the issues;" and (3) that there is no dispute that "Automattic, unlike most third-level domain owners, is a registration authority."

Automattic's proposed Counterclaim neither seeks an advisory opinion nor expands the issues in this case. To the contrary, the proposed Counterclaim directly addresses Plaintiff's own claim. Automattic's proposed Counterclaim does not request a judgment declaring that all third-party domains are outside of the scope of the ACPA; rather, Automatic asks this Court to declare that the *Muscle Beach Domains,* put at issue by Plaintiff, do not violate the ACPA. (*See* Morton Decl., Ex. A Counterclaim at ¶ 10, Prayer ¶ C.) Plaintiff again mischaracterizes Automattic's proposed Counterclaim, this time to suggest that permissive intervention is inappropriate because the proposed Counterclaim "would serve to greatly expand the issues in this case beyond those to which there is an actual case of controversy." (Opp. at 12.) Plaintiff's complaint claims that the Muscle Beach Domains, and specifically, the third-level domains, violate the ACPA. (Complaint, at ¶¶ 1, 2, 9-10.) Automattic's proposed Counterclaim asks for a declaration that the Muscle Beach Domains do not violate the ACPA, and as a factual allegation, states that "Plaintiff wrongly seeks an injunction based on a third-level domain, when only second level domains are actionable." (*See* Proposed Counterclaim at ¶ 7, Prayer ¶ C.) Plaintiff's Complaint states that Automattic is a "domain name authority," and Automattic's proposed Counterclaims states that there is a dispute over whether Automatic is a "domain name authority."[4] (Complaint, ¶ 10; Proposed Counterclaim, ¶¶7-8.) Plaintiff does not deny that, as Automattic alleges, "A declaration that Plaintiff's cybersquatting claim is barred will render moot many, if not all, existing claims and defenses in this Action." (Proposed Counterclaim, ¶ 9.) Plaintiff's tortured reading of the proposed Counterclaim does not change the fact that the proposed Counterclaim and "the main action have a question of law or fact in common." Fed. R. Civ. Proc. 24(b)(2); *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d at 1308. Further, although not required by the Federal Rules or the Ninth Circuit, Automattic's proposed Counterclaim does not expand the scope of the case nor does it request an advisory opinion. Accordingly, the Court should grant

---

[4] Plaintiff alleges that Automattic is the registrar or domain name authority for the Muscle Beach Domains, but this is incorrect, as the "whois" results show that Automattic is not the registrar or domain name authority for the Muscle Beach Domains. (Morton Decl., Ex. B.)

6

Automattic's request to intervene to resolve this dispute.

### III. CONCLUSION

For the foregoing reasons, Automattic respectfully requests that the Court grant its motion to intervene and allow Automattic to file its proposed Answer and Counterclaim.

Dated: May 19, 2015         PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:  /s/ *Melinda M. Morton*
     Melinda M. Morton
     Attorney for Non-Party
     AUTOMATTIC INC.