Gregory B. Collins (*pro hac vice*)
Eric B. Hull (# 291167)
KERCSMAR & FELTUS PLLC
SeaRise Building
233 Wilshire Boulevard
4th Floor
Santa Monica, CA 90401
Telephone: (310) 566-8176
Facsimile: (480) 421-1002
gbc@kflawaz.com
ebh@kflawaz.com

Attorney for Plaintiff/Counter-Defendant
ThermoLife International LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ThermoLife International LLC, an Arizona limited liability company,<br><br>        Plaintiff/Counter-Defendant<br><br>v.<br><br>https://ronkramermusclebeach.wordpress.com/, an Internet domain name;<br>https://ronkramermusclebeach.wordpress.com/author/musclebeachkramer/, an Internet domain name.<br><br>        Defendants. | Case No. 5:15-cv-01616-HRL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PERMISSIVE INTERVENOR AUTOMATTIC, INC. AND REPLY IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DOMAIN NAME DEFENDANTS**<br><br>**AND**<br><br>**RESPONSE TO AUTOMATIC, INC.'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>*Assigned to the Hon. Howard R. Lloyd* |
| Automattic Inc.<br><br>        Intervenor/Counter-Claimant. | Date: January 26, 2016<br>Time: 10:00 a.m.<br>Judge: Magistrate Judge Howard R. Lloyd<br>Ctrm: 2, 5th Fl.<br>Complaint filed: April 8, 2015<br>Trial date: November 9, 2016 |

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

# TABLE OF CONTENTS

I.      INTRODUCTION. ...............................................................................1

II.     THIS COURT HAS *IN REM* JURISDICTION. ................................3

        A.      Plaintiff Did Not Plead Its Way Out Of Court. ...............................3

        B.      Automattic Acted As A Domain Authority, Registrar, or Registry
                Conferring Jurisdiction In This District. .........................................4

                1.      Automattic is a Domain Name Authority. ...........................4

                2.      Here, Automattic also acted as a Registrar and Registry. ...................5

                3.      Automattic clearly "registered or assigned the domain name." ..........7

        C.      ThermoLife's Trademarks Are Protectable Under ACPA. .............8

III.    THIRD-LEVEL DOMAINS ARE ACTIONABLE UNDER ACPA. ....9

IV.     DEFAULT JUDGMENT IS WARRANTED—AS AN INTERVENOR,
        AUTOMATTIC HAS LIMITED STANDING HERE. ........................11

        A.      As A Permissive Intervenor, Automattic Does Not Step Into The
                Shoes Of The Muscle Beach Defendant. ......................................12

        B.      Regardless Of Its Status As An Intervenor Here, Automattic Does
                Not Have Standing To Question The Defendant's Intent. ............14

V.      THE DEFENDANT COMMITED CYBERSQUATTING. ..................17

        A.      In The Domains, The Defendant Used Plaintiff's Marks; Therefore,
                Element Two Of The ACPA Is Satisfied—Infringement Is Not
                Required. ......................................................................................18

        B.      The Defendant Registered The Muscle Beach Domains in Bad-Faith. .......19

VI.     CONCLUSION. ................................................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

# TABLE OF AUTHORITIES

**Cited Cases**

*Azadpour v. Sun Microsystems, Inc.*,
    2007 WL 2141079 (N.D. Cal. July 23, 2007)……………………………………4

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005)……………………………………………...*passim*

*Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*,
    642 F.3d 728 (9th Cir. 2011)……………………………………………………12

*Coca–Cola Co. v. Purdy*, 382 F.3d 774 (8th Cir.2004)…………………………...18, 20

*Denso Corp. v. Domain Name denso.com*,
    2014 WL 7208488 (N.D. Cal. Dec. 17, 2014)………………………………19, 20

*Deutschmann v. Sears, Roebuck, & Co.*,
    132 Cal. App. 3d 912, 915, 183 Cal. Rptr. 573 (Ct. App. 1982)……………..13, 16

*Dine v. Uniroyal Tire Co.*, 754 F.
    Supp. 98 (S.D. Miss. 1991)…………………………………………………..12, 13, 16

*Fed. Deposit Ins. Corp. v. Main Hurdman*,
    655 F. Supp. 259 (E.D. Cal. 1987)………………………………………………15, 16

*Harrods Limited v. Sixty Internet Domain Names*,
    110 F.Supp.2d 420 (E.D. Vir. 2000)……………………………………..*passim*

*Jones v. Bayer Healthcare LLC*,
    2009 WL 1186891 (N.D. Cal. May 4, 2009)……………………………………4

*Kowalski v. Tesmer*,
    543 U.S. 125, 129, 125 S. Ct. 564, 567, 160 L. Ed. 2d 519 (2004)………….....15, 16

*Office Depot Inc. v. Zuccarini*, 596 F.3d 696 (9th Cir. 2010) ……………………………6

*Omega S.A. v. Omega Engineering, Inc.*,
    288 F.Supp.2d 112 (D. Conn. 2002)……………………………………………18

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir.
    2007)……………………………………………………………………………4

*Shields v. Zuccarini*, 254 F.3d 476 (3rd Cir. 2001)……………………………………18

*Thermolife Int'l LLC v. https://ronkramermusclebeach.wordpress.com/*,
    2015 WL 3799498 (N.D. Cal. June 18, 2015)………………………….…*passim*

*United States v. Bd. of Ed. of Waterbury Conn.*,
    605 F.2d 573 (2d Cir. 1979)……………………………………………………18

*United States v. State of Oregon*, 657 F.2d 1009 (9th Cir. 1981)………………………..13

*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183 (9th Cir. 2009)……………………13

*Van Hoomissen v. Xerox Corp.*, 497 F.2d 180 (9th Cir. 1974)…………………………...12

*Vizer v. VIZERNEWS.COM*, 869 F. Supp. 2d 75 (D.D.C. 2012)……………………*passim*

**Statutes**

15 U.S.C. § 1117…………………………………………………………………..9

15 U.S.C.A. § 1125………………………………………………………………*passim*

15 U.S.C. § 1127……………………………………………………………....10, 11, 12

**Treatises**

Rights Of Others—Relationship Standing, 13A FED.
PRAC. & PROC. JURIS. § 3531.9.3 (3d ed. West 2015)………………………...15, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Keresmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

Plaintiff and Counter-Defendant ThermoLife International, LLC ("ThermoLife") submits its Reply in Support of its Motion for Judgment on the Pleadings Against Permissive Intervenor Automattic, Inc. ("Automattic"), Reply in Support of Motion for Default Judgment and Response to Automattic, Inc.'s Cross-Motion for Judgment on the Pleadings.

## I.       INTRODUCTION.

Automattic operates the website wordpress.com. When a customer directs his/her Internet browser to that URL, there is a button that declares: "Create Website." Pushing that button leads to a page where the customer selects a website design.  After selecting a design, the next page states: "Let's find a domain."  The customer is provided two options (using "example" as a template): 1) "example.com" for $18 per year; or 2) "example.wordpress.com" for free.

Both of these options create a user-chosen, alpha-numeric domain name that directs Internet users to a unique website created, updated, and maintained by the customer.  But Automattic argues that while one option ("example.com") is subject to the ACPA, the second option ("example.wordpress.com") is immune under the ACPA. According to Automattic, Congress was not concerned with the improper usurpation of trademarks in domain names but instead was only concerned with registered domain names.  Automattic is wrong.

The plain language of the ACPA makes third-level domain names actionable, explicitly referencing assigned domain names as well as registered names. And the ACPA never limits claims to domain names using only second-level domains. As if the plain language was not clear enough, the legislative history makes it clear that the Muscle Beach Domains at issue are actionable.  In 1999, the Senate contemplated Automattic's exact business model while debating coverage of the ACPA: "This definition [of domain name] . . . is technology neutral enough to accommodate names *other than second-level domains that are actually registered with domain name registration authorities*, *as may*

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1  *be the case should Internet domain name registrars begin to issue third or fourth level*

2  *domains.*" S. REP. 106-140, 10 (Exhibit 1 to Plaintiff's Motion) (emphasis added). To be

3  clear, Automattic is a domain name registrar—it is on ICANN's list of registrars[1]—and it

4  is issuing third-level domains to its customers.

5        Throughout its Brief, Automattic's only counter to this clear logic is its repeated

6  refrain that domain names require "registration." But a hard and fast rule that requires

7  registration renders other provisions of the ACPA meaningless. And the plainly stated

8  intent in the legislative history reveals that Automattic is simply wrong.

9        With its legal position regarding third-level domain names and *in rem* jurisdiction

10  here refuted, Automattic throws a Hail Mary. It seeks to assert rights that are not its to

11  assert. Automattic cannot step into shoes of its customer (hereinafter "Defendant"). The

12  Defendant registered the domain names anonymously and despote notice of this lawsuit

13  the Defendant has failed to appear and defend his/her actions. Automattic's status as a

14  permissive intervenor here does not allow Automattic to urge its customer's defenses.

15  The Court has already determined that Automattic has no protectable interest here.

16  Moreover, Automattic lacks standing to raise arguments relating to the use of the websites

17  or domain names at issue.

18        Furthermore, even if the Court were to consider Automattic's collateral attack on

19  ThermoLife's claims, Automattic is simply wrong. ThermoLife has a registered mark for

20  MUSCLE BEACH, which it uses in commerce. That mark is protectable and so are the

21  numerous unregistered marks—including the name of ThermoLife's President, Ron

22  Kramer—that ThermoLife has identified in the Amended Complaint (an ACPA claim

23  does not require a registered mark). The domain names at issue simply combine

24  ThermoLife's registered mark MUSCLE BEACH with the name of ThermoLife's

25  President, Ron Kramer, https://ronkramermusclebeach.wordpress.com/. This is textbook

26  cybersquatting. And the domain names themselves clearly relate to ThermoLife, they

27  misappropriate both ThermoLife's registered trademark and its President's name. Finally,

---

[1]      Dkt.#47 ¶ 28.

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

to the extent the Court wants to indulge Automattic's arguments on fair-use (and it should not) even where the register of the domains has failed to appear and defend his/her use of the domains, the Ninth Circuit has held that fair-use is not a complete defense to an ACPA claim.[2]   The arguably non-commercial use of the Muscle Beach Domains is only one factor this Court must consider when determining whether the domain was registered in bad-faith.  The Court must weigh that use with the other bad-faith factors, including that the anonymous registration of the websites at issue.[3]   With the factors properly weighed, bad-faith intent in registering the Muscle Beach Domains is established on ThermoLife's pleading.  At a minimum, fair-use here is a fact issue.

As explained further below, the Court should grant judgment in favor of Plaintiff on Automattic's counterclaim and a default judgment against the Muscle Beach Domains in the underlying action.

## II.     THIS COURT HAS *IN REM* JURISDICTION.

### A.     Plaintiff Did Not Plead Its Way Out Of Court.

Automattic opens its argument with a broad swipe at Plaintiff's entire case: "By admitting in the Complaint that Automattic is the registrant, ThermoLife demonstrated that there was an entity over which it could obtain *in personam* jurisdiction, thus defeating in rem jurisdiction." (Dkt.#53 at 11:16-18.)   Of course, Plaintiff's retrospectively loose language in the Complaint is the very reason why it filed an Amended Complaint (with no objection from Automattic) and does not constitute a case ending judicial admission.

The Ninth Circuit plainly and conclusively rejected Automattic's rigid rule:

> As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because,

---

[2]     *See Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 680-81 (9th Cir. 2005).

[3]     The provision of insufficient contact information when creating the domains is alone sufficient to establish bad-faith intent here  *See Harrods Limited v. Sixty Internet Domain Names,* 110 F.Supp.2d 420, 426-27 (E.D. Vir. 2000).

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. ***We do not call this process sham pleading; we call it litigation***.

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007) (emphasis added).

Automattic cites two unpublished cases that only serve to demonstrate why it is wrong. In *Azadpour v. Sun Microsystems, Inc.*, the plaintiff "expressly acknowledge[ed] that he is not asserting any liability against Matrix, Turumella, or Yeung with respect to his fraud claim and den[ied] that these Defendants caused him any harm, [and thereby] Plaintiff concede[d] he cannot state a claim against these Defendants." No. C06-03272 MJJ, 2007 WL 2141079, at *2 (N.D. Cal. July 23, 2007). In *Jones v. Bayer Healthcare LLC*, the court held that it could "conceive of no circumstances under which Jones can assert a valid fraud claim against Bayer. His one attempt to amend has resulted in statements that contradict his earlier allegations. The Court finds that it would be futile to allow Jones to amend his fraud claim again." 2009 WL 1186891, at *3-4 (N.D. Cal. May 4, 2009).

In this case, Plaintiff simply needed to clarify its argument in a complicated area of the law in order to properly identify the roles of the litigants. It did so in its Amended Complaint (and Automattic does not argue otherwise) and the Court should not rule that any previous pleading constituted a judicial admission.

### B.    Automattic Acted As A Domain Authority, Registrar, or Registry Conferring Jurisdiction In This District.

#### 1.    Automattic is a Domain Name Authority.

As an initial note, Automattic incorrectly states that, "ThermoLife concedes that Automattic is neither a domain name registrar nor a registry . . . ." (Dkt.#53 at 12:22-24.) Automattic is indisputably a registrar. (*See* Dkt.# 47 ¶ 28.) What ThermoLife concedes for purposes of this motion is that it did not act as a registrar in assigning the Muscle Beach Domains in the context of 15 U.S.C.A. § 1125(d)(2). Plaintiff will revisit the

4

1   importance of this distinction in addressing the definition of a "domain name" below, but
2   it is of little import in establishing that Automattic acted as an "other domain name
3   authority" under 15 U.S.C.A. § 1125(d)(2).

4        The definition of "other domain name authority" is important to establish *in rem*
5   jurisdiction, because: "The owner of a mark may file an *in rem* civil action against a
6   domain name in the judicial district in which the domain name registrar, domain name
7   registry, or ***other domain name authority*** that registered or assigned the domain name is
8   located . . . ." 15 U.S.C.A. § 1125(d)(2)(A) (emphasis added).  As presented in Plaintiff's
9   Motion, "While the statute is silent as to the specific definition of domain name authority,
10  the statute itself makes clear that the phrase 'other domain name authority that registered
11  or assigned the domain name,' covers only entities ***that perform the functions*** of the
12  registrar and registry by . . . assigning domain names." *Vizer v. VIZERNEWS.COM*, 869 F.
13  Supp. 2d 75, 82 (D.D.C. 2012) (emphasis added).  In order to establish the meaning of this
14  term, the *Vizer* court examined the legislative history: "Senator Patrick Leahy, a co-
15  sponsor of ACPA, stated that 15 U.S.C. § 1125(d)(2)(A) covers only those entities that
16  ***'actually offer the challenged name,'*** 'actually place the name in a registry,' or 'operate
17  the registry.'" *Id*. at 82-83 (quoting 145 Cong. Rec. 31,017 (1999)) (emphasis added).

18       Here, Automattic undoubtedly ***actually offered*** the Muscle Beach Domains.  A
19  customer requested the domains and Automattic provided them.  This alone establishes
20  Automattic is a domain name authority.  Nothing more need be established.  Automattic
21  wants to simply ignore this dispositive fact; for this reason alone, jurisdiction is proper
22  under section 1125(d)(2).

23       **2.      Here, Automattic also acted as a Registrar and Registry.**

24       Automattic wants to ignore the portion of the statute that allows claims to be
25  brought in the jurisdiction where the domain name authority resides, arguing that
26  jurisdiction is only appropriate where the registrar is located.  Indulging Automattic's
27  argument here, even if Automattic were somehow not a domain name authority, it would
28

Kersmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

5:15-cv-01616-HRL          Reply in Support of Its Motion for Judgment on Pleadings

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1    clearly be a registrar.  To understand Automattic's argument it is worth examining ***"the***

2    ***functions*** of the registrar and registry . . . ." Using Automattic's own case law, "A registry

3    operator maintains the definitive database, or registry, that associates the registered

4    domain names with the proper IP numbers for the respective domain name servers."

5    *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 698-99 (9th Cir. 2010).  Put more simply,

6    the registry ensures that the domain name directs Internet users to the right page and keeps

7    the master list of names in use. "Registrars accept registrations for new or expiring

8    domain names, connect to the appropriate registry operator's TLD servers to determine

9    whether the name is available, and register available domain names on behalf of

10   registrants . . . ." *Id.*  In other words, registrars act as the middleman, making sure that a

11   domain name is available, contacting the correct registry, and procuring that domain

12   name.

13        With respect to the Muscle Beach Domains, Automattic checked the availability of

14   the domain name, procured the domain name for its customer, and, through its own

15   servers, made sure the domain name directed Internet users to the appropriate customer-

16   generated page.  In other words, with respect to the Muscle Beach Domains, Automattic

17   served the functions of both the registrar and registry.  And, importantly, the legislative

18   history tells us that "[t]h[e] definition [of domain name] . . . is technology neutral enough

19   to accommodate names ***other than second-level domains that are actually registered***

20   ***with domain name registration authorities***, as may be the case should ***Internet domain***

21   ***name registrars begin to issue third or fourth level domains.***"  S. REP. 106-140, 10

22   (Exhibit 1 to Plaintiff's Motion) (emphasis added).  That is exactly what happened here.

23   So, in addition to being a domain name authority, in this instance Automattic was also a

24   registrar and registry.

25        Automattic attempts to avoid this conclusion, delving into a lengthy examination of

26   *Vizer,* and then baldly declares, "If ICANN, the corporation that runs the internet, is not a

27   domain name authority, it is difficult to see how Automattic could be one." (Dkt.#53 at

28

13:10-12.) But ICANN neither procures domain names for customers nor does it connect those domain names to the appropriate pages. Instead, "ICANN does not deal directly with registrants but has a contractual relationship with registries and accredits registrars." *Vizer*, 869 F. Supp. 2d at 78. It never interacts with customers seeking to obtain a domain name. So, contrary to Automattic's assertion, Automattic's function with respect to the Muscle Beach Domains is analogous to a registry and registrar while ICANN's role is not. Accordingly, with respect to the Muscle Beach Domains, Automattic's role is decidedly different than the role ICANN plays with domain names.

### 3. Automattic clearly "registered or assigned the domain name."

Automattic not only disputes that it is a "domain name authority," it also disputes that it "registered or assigned the domain name . . . ." 15 U.S.C.A. § 1125(d)(2)(A). (Dkt.#53 at 15.) But if Automattic acted as a domain name authority, it seems ludicrous to suggest it did not assign the Muscle Beach Domains. Its customer requested that domain name and Automattic provided it for that customer's use. By the plain meaning of the word, Automattic assigned the disputed domain name. Even Automattic seems to agree. In its Response Brief, Automattic cites *Vizer* again for the proposition, "in explaining the meaning of 'assign,' the court stated the term 'refers the allocation of the domain name or its subsequent transfer from one owner to another. . . . In the domain name context, a domain name is 'assigned' and the registry places the name into its database." (Dkt.#53 at 14:12-15 (quoting *Vizer*, 869 F. Supp. 2d at 82 (citing *CNN L.P. v. CNNews.com*, 56 Fed.Appx. 599, 601 (4th Cir. 2003)).) Here, Automattic transferred use of the Muscle Beach Domains to its anonymous customer. This is an assignment.[4] The

---

[4] Automattic claims that "with respect to 'assign,' Automattic did not allocate the Muscle Beach Domains to numeric internet protocol addresses or to a registrant and so it did not 'assign' the domain names." (Dkt.#53 at 15:26-28.) This argument deserves no more than a footnote. The ACPA does not define "assign" as allocate[ing] the domain to numeric internet protocol addresses. If Congress meant to use this specific definition of assignment, it could have defined the term "assign" in the statute. More importantly, however, while Automattic may not have "allocate[d] the Muscle Beach Domains to numeric internet protocol addresses," Automattic is the entity that ensures the Muscle Beach Domains direct Internet users to the appropriate pages. And Automattic was the entity that made the Muscle Beach Domains available for the anonymous customer's use.

Kercsmar & Feltus PLLC
SeatRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

Keresmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1   customer created pages that are readily accessible at the Muscle Beach Domains to this

2   day.

3        Accordingly, because Automattic is located here and because Automattic is a

4   domain name authority that registered or assigned the Muscle Beach Domains, this is "the

5   judicial district in which the . . . other domain name authority that registered or assigned

6   the domain name is located . . . ." and jurisdiction is appropriate here.  15 U.S.C.A. §

7   1125(d)(2).

8        **C.    ThermoLife's Trademarks Are Protectable Under ACPA.**

9        Automattic also disputes that jurisdiction is proper because "the purported marks at

10   issue are not registered in the U.S.P.T.O. and ThermoLife cannot establish a right to

11   protection from infringement or dilution of its purported marks."  (Dkt.# 53 at 16:20-

12   17:21.)  To borrow an often repeated phrase, everyone is entitled to their own opinion but

13   not their own facts.

14        ThermoLife owns U.S. Trademark Registration No. 0949098 for MUSCLE

15   BEACH.  (Dkt.# 46 ¶ 5.)  This mark is registered and in use.  And this is the very same

16   mark   that   is   misappropriated   in   the   Muscle   Beach   Domains,

17   ronkramermusclebeach.wordpress.com.

18        Moreover, contrary to Automattic's argument, the ACPA plainly protects

19   unregistered marks.  The statute reads: "The owner of a mark may file an *in rem* civil

20   action against a domain name …. If – (i) the domain name violates any right of the owner

21   of the mark registered in the Patent and Trademark Office, or protected under subsection

22   (a) or (c) ….."  15 U.S.C. § 1125(d)(1).  Thus, an *in rem* plaintiff can either have a

23   registered mark or a mark protected by 15 U.S.C. § 1125(a).  Section 1125(a) reads: "Any

24   person who, on or in connection with any goods or services … uses in commerce any

25   word, term, name which – is likely to cause confusion … shall be liable in a civil action

26

27   Therefore, Automattic's conduct constituted an assignment even under Automattic's

28   oddly specific definition of "assign."

8

Keresmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1    by any person who believes that he or she is or is likely to be damaged by such action." A

2    claim may be brought under 1125(a) by anyone using a mark in commerce, thus, 1125(d),

3    by incorporating 1125(a), clearly allows the holder of an unregistered mark to bring a

4    cybersquatting claims.[5]  And, as alleged by ThermoLife and as must be accepted for

5    purposes of ruling on Automattic's motion for judgment on the pleadings, "Ron Kramer

6    has common law trademark rights in his name, RON KRAMER, which has been used in

7    connection with the sale and advertising of dietary supplements for over sixteen years and

8    is widely known and identified in the industry."  (Dkt.# 46 ¶ 22.)  Thus, the Muscle Beach

9    Domain names plainly misappropriate Thermolife's protectable interest in its own

10   trademarks.  Automattic's argument here ignores the well-plead facts.  This Court has

11   jurisdiction.

12   **III.    THIRD-LEVEL DOMAINS ARE ACTIONABLE UNDER ACPA.**

13          With jurisdiction established, Automattic makes one additional argument that it has

14   standing to assert.  Automattic contends that ThermoLife's ACPA claim cannot lie here

15   because it is brought against a third-level domain.  Contrary to Automattic's assertions,

16   the definition of the term "domain name" in 15 U.S.C. § 1127 is not restricted to

17   registered, second-level domains. Instead, the language is broad.   And the legislative

18   history reveals that this broad language was intentional: "This definition [of domain

19   name] . . . is technology neutral enough to accommodate names other than second-level

20   domains that are actually registered with domain name registration authorities, as may be

21   the case should Internet domain name registrars begin to issue third or fourth-level

22   domains." S. REP. 106-140, 10 (Exhibit 1 to Plaintiff's Motion).

23          It is worth examining the clauses in this sentence individually. First, and most

24   importantly, Senator Leahy explicitly rejected Automattic's proffered registration

25   requirement, stating that the definition "accommodate[s] names ***other than second-level***

26   ***domains that are actually registered*** with domain name registration authorities . . . ." *Id*.

27   _____

28   [5]    By contrast, to recover damages in a trademark infringement action, the plaintiff
     must have a registered mark.  15 U.S.C. § 1117.

9

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1   (emphasis added).  So contrary to Automattic's premise, the ACPA is actually ***designed*** to

2   include domain names that are ***never registered*** and can certainly "accommodate" domain

3   names beyond the second-level.

4          The next clause provides a relevant example of the kind of domain name the ACPA

5   can regulate: "as may be the case should Internet domain name registrars begin to issue

6   third or fourth level domains." *Id*. This is where the distinction above regarding

7   concessions related to Automattic's role as a registrar gains import. Automattic is

8   undoubtedly an "Internet domain name registrar"— "Automattic admits that it is on the

9   List of Accredited Registrars set forth in Exhibit 1 to the Amended Complaint . . . ."

10  (Dkt.# 46 at ¶ 28.)  And Automattic issued (and notably Senator Leahy's statement uses

11  the term "issue" rather than "register") the Muscle Beach Domains as third-level domains.

12  Accordingly, the Muscle Beach Domains meet both the statutory definition of a domain

13  name and fall directly within the class of domains that the legislature explicitly

14  contemplated when drafting the "technology neutral" language of the statutory definition.

15         Automattic tries to salvage its position by pointing to a discrepancy in the language

16  used in Sections 1125(d)(2) and 1127: "ThermoLife has alleged that Automattic is a

17  'domain name authority' as the term is used in 15 U.S.C. § 1125(d)(2), but it has never

18  alleged that Automattic is a 'domain name registration authority' as used in the definition

19  of domain name." (Dkt.#53 at 21:12-18.)  But by highlighting this change in terminology,

20  Automattic actually undermines its own position.  Section 1125(d)(2), the provision that

21  forms the basis of the *in rem* claim, focuses on jurisdiction, basing it on the role the

22  domain authority plays in the transaction creating the disputed domain name:  "The owner

23  of a mark may file an *in rem* civil action against a domain name in the judicial district in

24  which the domain name registrar, domain name registry, or other domain name authority

25  that registered or assigned the domain name is located . . . ." 15 U.S.C.A. § 1125(d)(2).  In

26  order to provide jurisdiction for all applicable domain names, Section 1125(d)(2) does not

27  limit domain name authorities to those involved with registration.

28

1   By contrast, Section 1127 broadly defines the term "domain name" and is not
2   focused on an individual transaction that may have created one disputed domain name.
3   Accordingly, it adds the term "registration authority" in order to differentiate the situation
4   here—where a registrar issues its own third-level domains—from the circumstance in
5   which a second-level domain owner uses its own third-level domains—a situation that
6   would arguably fall outside the definition of a domain name, though that question is not at
7   issue here.

8   Furthermore, Automattic's reading is untenable and renders 15 U.S.C.A. §
9   1125(d)(2) circular and contradictory.   According to Automattic, the definition of
10  "domain name" in Section 1127, which includes the term "other domain name registration
11  authority," completely overrides Section 1125(d)(2), which uses the term "other domain
12  name authority."   Automattic would have this Court render the latter terminology
13  meaningless.   Plaintiff's proffered reading gives meaning to all of the terms in both
14  sections.   Third-level domains are actionable under the ACPA.

## IV.   DEFAULT JUDGMENT IS WARRANTED—AS AN INTERVENOR, AUTOMATTIC HAS LIMITED STANDING HERE.

17  Automattic claims, "ThermoLife is not entitled to default judgment against the
18  Muscle Beach Domains because . . . Automattic is not bound by any other defendant'[s]
19  default and Automattic has full standing as a defendant and counterclaimant that was not
20  limited by the Court . . . ." (Dkt.#53 at 26:21-25.)   The fundamental problem with this
21  statement is that Automattic should not be a defendant.   Plaintiff does not have any claims
22  against Automattic; if Plaintiff had tried to assert any, Automattic would have insisted it
23  was immune from suit under the Communications Decency Act.

24  Indeed, the Court has already found that Automattic is a permissive intervenor; it
25  follows then that Automattic does not step into the shoes of the Muscle Beach Domain
26  Defendant.   Automattic is a party here because the Court wanted to brief the legal
27  arguments that Automattic raised in its Motion to Intervene and (Original) Counterclaim
28  in Intervention.   Its role an intervenor is limited to those arguments.

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

11

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

Regardless of its status as an invervenor (permissive or otherwise), must have standing to assert defenses here.  Automattic clearly lacks standing to assert defenses that belong uniquely the Muscle Beach Domain Defendant.   As explained in more detail below, default is appropriate and should be entered.

### A.    As A Permissive Intervenor, Automattic Does Not Step Into The Shoes Of The Muscle Beach Defendant.

"The district court's discretion, at least under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues." *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir.) decision supplemented, 503 F.2d 1131 (9th Cir. 1974); *see also Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (same).  Here, the Court denied Automattic's request to intervene as a matter of right, concluding that Automattic had no direct interests in this case: "This court is unpersuaded, however, that Automattic has a significant protectable interest related to the subject matter of the litigation." *Thermolife Int'l LLC v. https://ronkramermusclebeach.wordpress.com/*, No. 5:15-CV-01616-HRL, 2015 WL 3799498, at *3 (N.D. Cal. June 18, 2015).

In granting Automattic's motion to permissively intervene, the Court (admittedly implicitly) limited Automattic's participation in the case to the legal issue raised in its initial counterclaim in intervention—whether a third-level domain is actionable under the ACPA.  (*See id*. at *5.)   That is a matter that Plaintiff squarely placed at issue in its complaint, alleging that jurisdiction is proper here because the named defendants are not immune from the ACPA's reach ***and because Automattic acted as a "domain name authority***." (Dkt.#1, Complaint ¶¶ 8–10).

To support its argument that an intervenor can raise any and all defenses belonging to anyone anywhere, Automattic cites a host of cases that involve intervention as a matter of right.  (Dkt.#53 at 27-30.)  Automattic cites *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009) and *Dine v. Uniroyal Tire Co.*, 754 F. Supp. 98, 101 (S.D. Miss. 1991) for the proposition that "Automattic's rights as a party to this action are not

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1  impaired by any default of the Domain Name Defendants because its rights as an

2  intervenor are independent, not derivative of the Domain Name Defendants." (*Id.* at

3  28:18-24.)   But both of those cases involved intervention as a matter of right.   The

4  intervenor's pecuniary interests were affected by the defendant's' defaults.   By

5  comparison, here the Court found that Automattic has no "significant protectable interest

6  related to the subject matter of the litigation." *Thermolife Int'l LLC*, 2015 WL 3799498, at

7  *3.   In other words, unlike the cited intervenors in the cases cited by Automattic,

8  Automattic has no rights at stake here.

9      One of Automattic's few cited cases that addressed permissive intervention, *United*

10 *States v. Bd. of Ed. of Waterbury Conn.*, explicitly noted that intervention could be limited

11 where the parties' interests do not align.   "The very purpose of intervention, whether of

12 right or permissive, is to enable those satisfying the requirements of Rule 24 to assert their

13 *interests* in all pending aspects of the lawsuit, ***within the limitations of purpose imposed***

14 ***at the time of intervention***."   605 F.2d 573, 576 (2d Cir. 1979) (emphasis added). [6]

15 Again, Automattic merely raised legal issues that included a "common question of law

16 and fact with the main action."   Automattic has no interest.[7]

---

[6]    Automattic also cites *United States v. State of Oregon* for the proposition that
intervenors "enter the suit with the status of original parties. . ." 657 F.2d 1009, 1014 (9th
Cir. 1981).  In this case, however, the Indian tribe was permitted to intervene as a matter
of right, which is not the case here.  *Id.* The intervenors in *Dine v. Uniroyal Tire Co., Inc.,*
754 F. Supp. 98, 99 (S.D. Miss. 1991) and *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d
1183, 1188 (9th Cir. 2009) were also permitted to intervene as a matter of right as well.
*See also Deutschmann v. Sears, Roebuck, & Co.*, 132 Cal. App. 3d 912, 915, 183 Cal.
Rptr. 573, 575 (Ct. App. 1982)("Of significance to the decision we reach here, however, is
the fact that an insurer under such circumstances is not limited to an action in
intervention; he may bring a separate independent action to recover directly from the
third-party tortfeasor.")

[7]    Similarly, Automattic block quotes a case stating: "A party permitted to intervene
is permitted to do so *in order to pursue its own interests*.  Once permitted to intervene, it
is a party to the action not bound by other parties' procedural defaults." (Dkt.#53 at 29:3-8
(quoting *W. Heritage Ins. Co. v. Superior Court*, 199 Cal. App. 4th 1196, 1207, 132 Cal.
Rptr. 3d 209, 218 (2011)) (emphasis added).)  Again, Automattic has no "significant
protectable interest related to the subject matter of the litigation."  The Court has already
reached this conclusion and appropriately limited Automattic's participation here.

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

Automattic's unauthorized Amended Counterclaim is a Trojan Horse that does not change this analysis.  With its Motion to Intervene, Automattic filed a ten (10) paragraph Counterclaim in Intervention.   With the permission of the Court and Automattic's blessing, Plaintiff filed an Amended Complaint.  Automattic responded by expanding its Amended Counterclaim to thirty-seven (37) paragraphs, including several related to the anonymous author's First Amendment rights—an issue unrelated to this case. *See Thermolife Int'l LLC v*, 2015 WL 3799498, at *4 (N.D. Cal. June 18, 2015) ("Ultimately, however, this is not a First Amendment case.").  The reason for this expansion in the issues covered in Automattic's counterclaim is obvious.  Automattic realizes that its legal argument regarding third-level domains has no merit and it is looking for some basis to continue the case.  Suddenly, Automattic is interested in Plaintiff's marks and whether its user had a bad-faith intent to profit.  Automattic did not raise these issues in its Motion to Intervene for a reason—they are beyond the scope of Automattic's (extremely limited) interest in this case.  The Court granted Automattic a right to permissively intervene in order to argue its legal position as raised in its original counterclaim.   Now that Automattic has made its way in to the case, the Court should not allow it to expand its presence into some kind of defense by proxy for the Muscle Beach Domains.

**B.     Regardless Of Its Status As An Intervenor Here, Automattic Does Not Have Standing To Question The Defendant's Intent.**

Without citation to any legal authority, Automattic claims that because it was permitted to intervene in this action, "it is allowed to raise any claims or defenses ***that the defaulted defendant could have raised***."  (Dkt.#53, 27:7-8.)  This is simply not the case. As detailed above, the Court has already properly limited Automattic's role in this dispute, but even ignoring the Court's order on intervention, Automattic lacks standing to assert the defenses it now seeks to raise.  Automattic does not have standing to assert claims or defenses that belong to another party.  "We have adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief

on the legal rights or interests of third parties.'" *Kowalski v. Tesmer,* 543 U.S. 125, 129, 125 S. Ct. 564, 567, 160 L. Ed. 2d 519 (2004).   A defendant "must have Article III standing to pursue affirmative defense."   *United States v. Dunifer*, 997 F. Supp. 1235, 1240 (N.D. Cal. 1998) *aff'd on other grounds*, 219 F.3d 1004 (9th Cir. 2000); *see also Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 269 (E.D. Cal. 1987) ("[O]n the occasions where a civil defendant's standing is in issue, the court engages in standard standing analysis.").

While Automattic may have standing to assert defenses with regard to ownership of the domains and whether an *in rem* claim against a third-level domain is permitted under the ACPA, it does not have standing to challenge the intent of the party who created the Muscle Beach Domains.  This defense is afforded to the party that created the domains alone, as it is his or her intent that gave rise to this claim.  This is because "[t]hose whose interests or rights are considered may be better advocates because they are more intensely involved, ***are better informed, and are able to provide the clear illumination that comes from considering their particular circumstances***."   Rights Of Others—Relationship Standing, 13A Fᴇᴅ. Pʀᴀᴄ. & Pʀᴏᴄ. Jᴜʀɪs. § 3531.9.3 (3d ed. West 2015) (emphasis added).  Simply put, Automattic has no idea what the party who created the Muscle Beach Domains intended.  The only evidence of that party's intent would come directly from that party.  As ThermoLife contends, that party is very likely, "an individual that is paid by dietary supplement companies to promote dietary supplement products and/or disparage Muscle Beach's name and products." (Dkt.#46 ¶ 37.)  Furthermore, as ThermoLife has alleged:

> The Muscle Beach Domains include content aggregated from websites that contain false information regarding Ron Kramer. Much of the information published on the Muscle Beach Domains has already been adjudicated false and defamatory by the New Jersey Federal District Court. Other information found on the Muscle Beach Domain is taken from public records searches. The government agencies that authored the public records at issue have repeatedly acknowledged that the records

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

published on the Muscle Beach Domains contain false information.

(*Id.* ¶¶ 38-39.)  Automattic lacks standing to challenge these allegations. [8]

ThermoLife recognizes that there is an exception to the general rule that a party must have standing to assert an affirmative defense, but this exception does not apply here.  A third party may have standing to assert the claim or defense belonging to another when "the party asserting the right has a 'close' relationship with the person who possesses the right" and when "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer,* 543 U.S. 125, 129-30, 125 S. Ct. 564, 567, 160 L. Ed. 2d 519 (2004).[9]  Automattic cannot satisfy either requirement.  First, Automattic does not have a close relationship with party that created the Muscle Beach Domains.  In fact, Automattic cannot even identify the individual.  Moreover, nothing is stopping that individual from appearing in the lawsuit.  In fact, the evidence suggests that that individual did not want to assert his or her right to defend the Muscle Beach Domains based on his or her intense efforts to keep his or her identity a secret through the use of an untraceable IP address and an anonymous email address. (*See* Dkt.#53 at 8:26-9:4.)

---

[8]   Moreover, "[s]tanding also may be denied on more general grounds, including concern that the challenged act has had only limited impact" on the party attempting to assert standing. § 3531.9.3 Rights Of Others—Relationship Standing, 13A FED. PRAC. & PROC. JURIS. § 3531.9.3 (3d ed.); *see also Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 271 (E.D. Cal. 1987) (stating that if a party is in the same condition it would have been without regard to the claimed unlawful conduct, it lacks standing to challenge that conduct).  Here, unlike the intervenors that were granted invention *as a matter of right* in *Association of Contracting Plumbers of City of New York, Inc. v. Local Union No. 2 United Association of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 841 F.2d 461, 467 (2d Cir. 1988), the Court has already concluded that Automattic does not have "a significant protectable interest related to the subject matter of the litigation." (*See* Dkt.# 19 at 4:24-26.)

[9]   In each of the cases cited by Automattic where an intevenor is permitted to assert the claims or defenses of another party, there was a "close" relationship between the intervenor and third party. *See e.g. Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1185 (9th Cir. 2009)(service provider and customer, and third-party beneficiary to an insurance contract); *see also Dine v. Uniroyal Tire Co., Inc.*, 754 F. Supp. 98, 99 (S.D. Miss. 1991)(A workmen's compensation insurance relationship); *Deutschmann v. Sears, Roebuck, & Co.,* 132 Cal. App. 3d 912, 914, 183 Cal. Rptr. 573, 574 (Ct. App. 1982)(insurance relationship); *W. Heritage Ins. Co. v. Superior Court*, 199 Cal. App. 4th 1196, 1205, 132 Cal. Rptr. 3d 209, 216-17 (2011)(insurance relationship). As explained above, no "close" relationship is present here.

1   Because Automattic does not have standing to challenge the Defendants' intent when

2   creating these domains, the well-plead facts continue to be presumed true as a result of the

3   Defendant's default.

4          Whether Court views this as an intervention issue or a standing issue, the result is

5   the same.  Automattic cannot raise defenses that are not its to assert.  It can challenge

6   jurisdiction and assert that it the owner of the websites at issue, but it cannot defend the

7   unknown defendant's actions when creating and using the Muscle Beach Domains.

8   Accordingly, with Automattic's proper legal challenge decided against it, the Court can

9   now dismiss Automattic's intervenor and grant ThermoLife default.

10  ## V.   THE DEFENDANT COMMITED CYBERSQUATTING.

11         As explained above, Automattic lacks standing to challenge whether the defendant

12  committed cybersquatting by setting up the Muscle Beach Domains.  But, if for some

13  reason default were not entered on this issue, there would be, at the very least, a fact issue

14  here.

15         Cybersquatting occurs when a person other than the trademark holder (1)

16  "registers, traffics in, or uses a domain name," (2) that is confusingly similar to another's

17  mark or dilutes another's famous mark (3) with the "bad faith intent to profit from that

18  mark." 15 U.S.C. § 1125(d)(1)(A) (2004).   The first element of the claim is

19  unquestionably met by the use of the domain.  As detailed further below, the second

20  element is met here because the domains use letter-for-letter two of ThermoLife's marks

21  and, contrary to Automattic's argument, infringement is not necessary to establish this

22  element.  And the third element, bad-faith intent, is satisfied here because six of the nine

23  bad-faith factors weigh in ThermoLife's favor.  At the very least, there is a fact issue on

24  this element.

25

26

27

28

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

17

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

A. **In The Domains, The Defendant Used Plaintiff's Marks; Therefore, Element Two Of The ACPA Is Satisfied—Infringement Is Not Required.**

The second element of a cybersquatting claim requires that the defendant use a mark that is "confusingly similar" to marks at issues.  Critically, this element does not require the plaintiff to demonstrate that its mark is infringed.  *See Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 680-81 (9th Cir. 2005); *see also Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 234 (4th Cir. 2002); *Shields v. Zuccarini,* 254 F.3d 476, 483-84 (3rd Cir. 2001).

In *Bosley Medical Institute, Inc. v. Kremer*, the Ninth Circuit Court of Appeals affirmed the district court's dismissal of the plaintiff's claim for trademark infringement because the defendant's website www.BosleyMedical.com did not have a commercial use and, therefore, there could be no infringement.  403 F.3d at 676.  But, after affirming dismissal of the infringement claim, the appellate court reversed the trial court's ruling dismissing the plaintiff's ACPA claim.  *Id.* at 680-81.  As the *Bosley* court explained, "the court should confine its inquiry to the elements of the ACPA claim listed in the statute, particularly to whether [the defendant] had a bad faith intent to profit from his use of Bosley's mark in his site's domain name. Bosley has met the first prong of the ACPA (that the domain name is identical to the mark) because Kremer used an unmodified version of Bosley's mark as his domain name." *Id.*

Like the defendant in *Bosley*, the Defendant here has used an unmodified version of the plaintiff's marks.  The Muscle Beach Domains misappropriate the MUSCLE BEACH mark, together with ThermoLife's common-law mark for the name of its President, Ron Kramer.   Here, the marks used are identical to ThermoLife's marks for MUSCLE BEACH and Ron Kramer.[10]  Thus, this element of the claim is established.

Oddly, Automattic contends that in an *in rem* proceeding to satisfy this element

---

[10]     When evaluating whether domain name is confusingly similar to trademark, within meaning of the ACPA, the court disregards top–level domain name, *i.e.,* ".com", ".org", ".net" etc. *E.g., Coca-Cola Co. v. Purdy,* 282 F.3d 774 (8th Cir. 2004); *Omega S.A. v. Omega Engineering, Inc.,* 288 F.Supp.2d 112 (D. Conn. 2002).

Kersmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

ThermoLife must prove infringement.  Automatic relies on only one case to support its claim here, *Denso Corp. v. Domain Name denso.com,* 2014 WL 7208488, at *3 (N.D. Cal. Dec. 17, 2014).  But, the portion of *Denso* that Automattic cites is just the district court's quick recitation of the elements of a cybersquatting claim, indicating that these elements are met.  And certainly, the elements of the claim are met by infringement, but (as *Bosley* informs) infringement is not required.   There is absolutely no discussion in *Denso* regarding why a plaintiff in an *in rem* action would be required to prove infringement, when a plaintiff in a non *in rem* action is only required to show use of a mark that is confusingly similar and a bad-faith intent to profit.   Indeed, elsewhere in the *Denso* decision, the court summed up the elements of cybersquatting stating: "15 U.S.C. § 1125(d)(1), creates a cause of action for 'cybersquatting.' This, in sum, is the bad-faith use of a domain name in order to profit from the goodwill of a protected mark belonging to someone else."  *Denso Corp. v. Domain Name denso.com,* 2014 WL 7208488, at *3 (N.D. Cal. Dec. 17, 2014).   No court anywhere has held that infringement is necessary in an *in rem* action—it is not.   Defendant used a confusingly similar mark to Plaintiff's registered mark and Plaintiff's common-law mark; therefore, this element is met here.

**B.      The Defendant Registered The Muscle Beach Domains in Bad-Faith.**

Despite Automattic's assertion to the contrary, even if Automattic had standing to challenge the Defendant's intent, the nine statutory factors for determining bad-faith with intent to profit weigh heavily in favor of ThermoLife. Automattic concedes that the first three factors weigh in favor of ThermoLife.  (*See* Dkt.# 53 at 29:27-28.) The Defendant does not have any trademark or other intellectual property rights in ThermoLife's marks, and ThermoLife has not given the Defendant permission to use its marks in Defendant's domain names.

Automattic relies heavily on its claim that the Defendant's use of the Muscle Beach Domains to comment or criticize constitutes fair use of the mark, rendering Factor IV in its favor. But "the use of a domain name in connection with a site that makes a

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

noncommercial or fair use of the mark ***does not necessarily mean that the domain name registrant lacked bad faith***." *Bosley Med. Inst., Inc. v. Kremer,* 403 F.3d 672, 680-81 (9th Cir. 2005) (emphasis added), quoting *Coca–Cola Co. v. Purdy,* 382 F.3d 774, 778 (8th Cir.2004); *see also* H.R.Rep. No. 106–412 at 11 (1999) ("This factor is not intended to create a loophole that otherwise might swallow the bill, however, by allowing a domain name registrant to evade application of the Act by merely putting up a noninfringing site under an infringing domain name."). As the *Bosley* Court explained, "this factor would be meaningless if the statute exempted all noncommercial uses of a trademark within a domain name." 403 F.3d at 676. At the very least, the application of this factor here is a fact issue. ThermoLife has alleged in its Amended Complaint that the content included on the Muscle Beach Domains is false and defamatory. (Dkt.#46 ¶¶ 38-40.) Further, ThermoLife has alleged that the content was likely posted by an individual seeking to hurt ThermoLife's business. (*Id.* ¶ 37.) These allegations must be accepted by Automattic at least on its own motion for judgment on the pleadings. And these allegations establish that there is, at the very least, a fact issue here.

Regarding the remaining factors, ThermoLife acknowledges that the Defendant has not attempted to sell the domains to ThermoLife. This fact, however, does not render factor VI favorable to Automattic as neither party can determine if the Defendant has attempted to sell the Muscle Beach Domains to any other unknown party. As a result, this factor is neutral to both ThermoLife and Automattic.

Factor VII clearly weighs in favor of ThermoLife; Automattic admits that the Defendant failed to provide it with any contact or identifying information. (*See* Dkt.#53, 8:26-9:4.) At least one court has suggested that in an *in rem* proceeding, "[a] person's provision of material and misleading false contact information when applying for the registration of the domain name [or] the person's intentional failure to maintain accurate contact information," is alone sufficient to establish a bad-faith intent to profit from the domain. *Harrods Limited v. Sixty Internet Domain Names,* 110 F.Supp.2d 420, 426-27

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

(E.D. Vir. 2000).  And this makes sense, given that in an *in rem* proceeding the plaintiff would otherwise have no way to prove this element, because the registrant and his motives are not identifiable.  As the Eastern District of Virginia explained:

> We understand plaintiff's concern that a requirement of showing "bad faith intent" in an *in rem* proceeding, which Congress created largely for the purpose of providing remedies for trademark owners who cannot find a person or entity responsible for registering the offending domain names, will be difficult in a default proceeding. However, we think that plaintiff's fear is unfounded. Among the eight non-exclusive factors Congress directed the courts to consider in their analysis of the bad faith intent element under the ACPA is whether the registrant has provided accurate information to the registrar, such as: "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(VII). Failure to keep one's address current or to leave an accurate forwarding address certainly casts doubt on the bona fides of a registrant. This fact coupled with the similarity of the offending mark may well be sufficient to enable a plaintiff facing a defaulting domain name to obtain an *in rem* judgment against the domain name.

*Id*.  Here, the Defendant used an anonymous and untraceable email to register the Muscle Beach Domains. (*Id*.) Accordingly, this factor weighs strongly in favor of bad-faith and, as the *Harrods* Court suggested, this factor is alone dispositive of bad-faith.

Factor VIII also weighs in favor of ThermoLife as Automattic acknowledges that the Defendant created multiple third-level domains using the protected mark. (*See* Dkt.# 53 at 8:26-9:4.)

Factor IX relates to whether the mark is famous or distinctive.  Incredibly, Automattic claims that ThermoLife has agreed that it is not using the marks, so this cuts in Automattic's favor.  (Dkt.# 53 at 26:14-18.)  ThermoLife has a registered mark for MUSCLE BEACH that is in use.  ThermoLife has a common-law mark for Ron Kramer

Reply in Support of Its Motion for Judgment on Pleadings

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1   that is in use.  The distinctiveness of these marks is clearly a fact issue that cannot be

2   determined on the pleadings; accordingly, this factor is neutral.

3         Based on the analysis above, it is clear that at least six of the nine factors weigh in

4   favor of a finding of bad-faith.  Only two factors weigh in favor of Automattic, and the

5   final factor is neutral to both parties.  Furthermore, the Defendant's provision of

6   insufficient contact information when creating the domains is sufficient alone to establish

7   bad-faith.  Viewing these factors as a whole, it is clear that ThermoLife has successfully

8   established on the pleadings that Defendant has a bad-faith intent to profit from the use of

9   ThermoLife's trademarks.  At a minimum, this is a fact issue.  And, as explained above,

10   this is a fact issue that the un-appearing Defendant has conceded and Automattic lacks

11   standing to challenge.

12

13   **VI.   CONCLUSION.**

14         ThermoLife respectfully requests that the Court grant ThermoLife judgment on

15   Automattic's counterclaim in intervention.  *In rem* jurisdiction is appropriate here over the

16   Muscle Beach Domains because Automattic acted as a domain name authority when it

17   established the Muscle Beach Domains for its customer and then assigned those domains

18   to its customer.  Furthermore, ThermoLife holds a valid registered mark that is used in

19   commerce and it also holds common-law marks that are properly the basis for an ACPA

20   claim here.  Finally, as set forth in detail above, third-level domains are actionable under

21   the ACPA.  With these issues resolved, the Court can dismiss Automattic's counterclaim

22   in intervention.

23         The remaining issues Automattic raises are defenses to ThermoLife's claims that

24   Automattic lacks standing to assert.  The party that established the Muscle Beach

25   Domains has failed to appear and defend its conduct.  Accordingly, default should be

26   entered against the Defendant and Automattic's arguments should be

27   disregarded.  Regardless, as detailed above, Automattic's remaining arguments have no

28

5:15-cv-01616-HRL          Reply in Support of Its Motion for Judgment on Pleadings

1  merit.  The Defendant committed cybersquatting in establishing the Muscle Beach

2  Domains and judgment should be entered in ThermoLife's favor on the pleadings.

3

4          RESPECTFULLY SUBMITTED this 6th day of January, 2016.

5

6                          KERCSMAR & FELTUS PLLC

7

8              By: */s/Gregory Collins*

9                     Gregory B. Collins
                      Eric B. Hull

10                     SeaRise Building
                      233 Wilshire Boulevard

11                     4th Floor
                      Santa Monica, CA 90401

12                     *Attorneys for ThermoLife International LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kercsmar & Feltus PLLC
SeaRise Building
233 Wilshire Blvd., 4th Floor
Santa Monica, CA 90401
(310) 566-8176

# CERTIFICATE OF SERVICE

I certify that on January 6, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Melinda M. Morton
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
1020 Marsh Road, Suite 200
Menlo Park, CA 94025
mindy.morton@procopio.com
*Attorneys for Intervenor-Defendant/Counterclaim Plaintiff Automattic Inc.*

*/s/Gregory Collins*

5:15-cv-01616-HRL          Reply in Support of Its Motion for Judgment on Pleadings