MELINDA M. MORTON, SBN 209373
mindy.morton@procopio.com
JAMIE D. QUIENT, SBN 279525
Jamie.quient@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
1020 Marsh Road, Suite 200
Menlo Park, CA  94025
Telephone: 650.645.9000
Facsimile:  619.235.0398

Attorney for Intervenor and Counter-Claimant
AUTOMATTIC INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, an Arizona limited liability company,<br><br>             Plaintiff and Counter-Defendant,<br><br>v.<br><br>https://ronkramermusclebeach.wordpress.com/, an Internet domain name;<br>https://ronkramermusclebeach.wordpress.com/author/musclebeachkramer/, an Internet domain name,<br><br>             Defendants.<br><br>AUTOMATTIC INC.<br><br>             Intervenor and Counter-Claimant. | Case No. CV15-01616 HRL<br><br>**INTERVENOR AND COUNTER-CLAIMANT AUTOMATTIC INC.'S REPLY RE ITS CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:    January 26, 2016<br>Time:   10:00 a.m.<br>Judge:  Magistrate Judge Howard R. Lloyd<br>Ctrm:    2, 5th Fl.<br><br>Complaint filed: April 8, 2015<br>Trial date:          November 9, 2016 |

Intervenor and Counter-Claimant Automattic Inc. ("Automattic"), submits the following reply in support of Automattic's Cross-Motion for Judgment on the Pleadings.

## I. INTRODUCTION

It is clear that ThermoLife brought this case because the Muscle Beach Domains do not portray Ron Kramer in a flattering way. ThermoLife is currently suing the unknown user in Arizona for defamation. However, the ACPA was enacted to prevent cybersquatting, and not to shut down critical websites. ThermoLife is trying to shoehorn what is in essence a defamation case into a cybersquatting case, and it simply doesn't fit. ThermoLife first claimed that Automattic was the registrant of the Muscle Beach Domains, and then, in its Amended Complaint, claims that instead, Automattic is a "domain name authority." ThermoLife admits that the Muscle Beach Domains are not registered on the official .com registry, but argues that it shouldn't matter. ThermoLife admits that the Muscle Beach Marks dealing with nutritional supplements aren't yet registered, but argues that trademark registration isn't important. ThermoLife admits that the Muscle Beach Domains do not display advertising or offer products for sale, but argues that use of the marks in commerce isn't essential. ThermoLife attempts to explain away all of the critical elements for an *in rem* ACPA case, but in so doing, it is left without a plausible cause of action. Third-level domains have never been held to be actionable under the ACPA, and the only court to consider the issue determined that the ACPA simply didn't extend to third-level domains. To put it simply, ThermoLife is not entitled to relief under the ACPA for the use of un-registered trademarks in a third-level domain name for a critical site.

## II. ARGUMENT

### A. Third-level domains are not actionable under the ACPA[1]

ThermoLife relies on Senator Leahy's statement in the ACPA's legislative history to support its claim that third-level domains are actionable under the ACPA, but the argument ignores a key phrase and confuses the general with the specific. Senator Leahy stated that the definition of

---

[1] This Reply Brief only responds to ThermoLife's Opposition to Automattic's Cross-Motion for Judgment on the pleadings, and therefore does not address Plaintiff's arguments regarding default, Automattic's standing, and ThermoLife's claim that the Muscle Beach Domains had a bad faith intent to profit.

1

domain name "is technology neutral enough to accommodate names other than second-level domains that are actually registered with domain name authorities, as may be the case should Internet domain name registrars begin to issue third or fourth-level domains." Ex. 1 to Plaintiff's Motion. First, ThermoLife ignores the phrase "actually registered" in the statement, which makes it inapplicable here because all parties admit that the Muscle Beach Domains are not registered. See Answer to Automattic's Counterclaim, ¶ 19. Second, ThermoLife uses this statement to argue that because Automattic is a domain name registrar, the Muscle Beach Domains must be subject to the ACPA. ThermoLife's interpretation is strained, at best. It is true that Automattic has a contract with Verisign to perform the duties of a domain name registrar, but Automattic did not act as the domain name registrar for the domains at issue here. It could not have acted as the registrar because, as all parties agree, the Muscle Beach Domains are not registered. Because Automattic did not act as the registrar for the Muscle Beach Domains, it therefore can't follow that Senator Leahy's statement means that the third-level Muscle Beach Domains are subject to the ACPA.[2]

ThermoLife also fails to effectively distinguish its claims from those in GoForIt Entertainment, LLC v. DigiMedia.Com L.P., 750 F.Supp.2d 712 (N.D. Tex. 2010), which is directly on point.[3] In that case, the court concluded that "as a matter of law, third level domain names are not covered by the ACPA." Id. at 723. In coming to this conclusion, the court noted that third-level domains are outside the scope of the ACPA because they are not "registered with or assigned by" a domain name registrar. Id. The GoForIt court further noted that "once a company or individual registers any second level, they (and they alone) are free to create an unlimited number of specific subdomains that resolve to their servers and websites." Id. at 724. Automattic has done nothing more than create specific subdomains, which every registrant of a second-level domain is entitled and empowered to do. ThermoLife's entire case rests on this Court finding that

---

[2] Some registrars, such as the operator of the ".wed" top level domain, have requested permission from ICANN to offer registerable third-level domains, but they must have ICANN's approval to proceed. See Counterclaim, ¶ 14, Ex. C. Here, ThermoLife has not alleged that Automattic has approval from ICANN to register third-level domains. Nor has ThermoLife offered any evidence that the Muscle Beach Domains are actually registered—in fact, ThermoLife has admitted that they are not.
[3] Although not binding precedent, this is the only case either party has discovered discussing the issue of third-level domains and the ACPA.

any registrant's use of subdomains constitutes registering and assigning under the ACPA, an argument considered and rejected by the GoForIt court. Id. at 724. ("[t]his statement actually supports the conclusion that domain name registrars assign second level domains but not subdomains (e.g., third level domains) under the second level."). The Court should reject ThermoLife's arguments here for the same reasons. Until subdomains are registered and overseen by Verisign and ICANN, the ACPA simply doesn't apply because essential parts of the statute would be superfluous (including the numerous references to registering, registries, and registration authorities). See Circuit City Stores, Inc. v. Adams 532 U.S. 105, 113 (2001) (statutes should not be interpreted in a way that renders other provisions superfluous); see also Reardon LLC v. Reardon Commerce, Inc., 683 F.3d 1190, 1197 n.1 (9th Cir. 2012) ("A registrant can register a domain name only through companies that serve as registrars for second level domain names"); GoForIt Entertainment, LLC v. DigiMedia.Com L.P., 750 F.Supp.2d 712, 723 (N.D. Tex. 2010) ("The only part of a web address that must be registered is a second level domain. Establishing a third level domain does not require registration with or assignment by a domain name registration authority."); Cross Motion Section V(B)(1). Therefore, the unregistered Muscle Beach Domains do not fall under the purview of the ACPA, and Automattic's motion should be granted.

**B.    Automattic is not the "registrar" or "registry" for the Muscle Beach Domains**

ThermoLife claims in its Opposition that Automattic acted as "a registrar and registry." Opposition at 5. However, case law and ThermoLife's own admissions prove otherwise. Automattic alleged in its Counterclaim that "Pursuant to a contract with ICANN, Verisign has exclusive rights to administer that registry for .com domains in the United States." Counterclaim at ¶ 13. ThermoLife admitted this allegation in its Answer. Answer to Automattic's Counterclaim, ¶ 13. Further, in Coal. For ICANN Transparency, Inc. v. VeriSign, Inc., 611 F.3d 495, 500 (9th Cir. 2010), the Ninth Circuit held that "Defendant VeriSign is a corporation that, through its contractual relationship with ICANN, acts as the sole operator of the .com and .net domain name registries. This means that VeriSign manages the definitive databases of registered .com and .net domain names." Therefore, Automattic cannot be the registry for the Muscle Beach Domains.

Because Automattic is not the registry, it cannot be the registrar. Registrars "make domain

3

names available to customers and register domain names with a registry." Vizer v. VIZERNEWS.COM, 869 F. Supp. 2d 75, 78 (D.D.C. 2012). Further, "[t]he initial contract between the customer and the registrar requires the registrar to register the customer's domain name with a registry, which maintains a list of all domain names within its domain." Id. at 82. Although it is true that Automattic interfaced with the user here, *it did not register the name with a registry*. ThermoLife ignores this critical job requirement of any domain name registrar in its Opposition, instead focusing only on Automattic's interactions with its users. Such interaction is required, but is not sufficient to be the registrar of a domain name—the entity must *also* register the name with a registry. The only authorized registry for .com domains is maintained by VeriSign, and ThermoLife admits that the Muscle Beach Domains are not registered with VeriSign. See Answer to Automattic's Counterclaim, ¶ 19. Therefore, Automattic cannot be the registrar for the Muscle Beach Domains.

### C. Automattic did not "assign" the Muscle Beach Domains, Automattic is not a "domain name authority," and the Muscle Beach Domains are not a "domain name" as defined by the ACPA

ThermoLife pins its case on the meaning of "assign" and "other domain name authority." For all of the reasons discussed in Automattic's Cross Motion, ThermoLife's definitions of these terms are wrong. ThermoLife does not offer any cases contradicting the cases cited in Automattic's Cross-Motion, instead calling the Vizer court's analysis "oddly specific."

However, even assuming, arguendo, that ThermoLife's proposed definitions of these terms is correct, ThermoLife's case should still be dismissed with prejudice. The ACPA only governs disputes involving "domain names." This term is defined in the statute as "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C. § 1127. ThermoLife admits that Automattic is not the domain name registrar or domain name registry for the Muscle Beach Domains. See Opening Motion at 12, Answer to Automattic's Counterclaims, ¶ 19. Further, as discussed in Section II.B, supra, Automattic cannot be the registrar or registry. Therefore, Automattic would have to be an "other domain name registration authority," which would be impossible, as the Muscle Beach Domains are not

4

registered. ThermoLife admitted as much in its answer. Answer to Automattic's Counterclaim, ¶ 19. By the plain language of the ACPA, this unregistered third-level domain is not a domain name as defined in the statute. The only court to address this issue agreed. See GoForIt, 750 F.Supp.2d at 724. ("Accordingly, because under the ACPA a "domain name" is "registered with or assigned by" a website registrar, and third level domains are not registered or assigned, third level domains fall outside the ACPA definition of a "domain name."). ThermoLife can choose to call Automattic whatever term it wishes, but name-calling will not force the Muscle Beach Domains into the statutory definition of "domain name."

### D. The purported marks are not actionable under the ACPA

As discussed in Automattic's cross-motion, in order to bring an in rem action against a domain name and to state a claim under 15 U.S.C. § 1125(d)(2), ThermoLife must establish that it owns a registered trademark or a mark protected under § 1125(a) [infringement] or 1125(c) [dilution]. 15 U.S.C. § 1125(d)(2)(A).[4] ThermoLife claims in its Opposition that its ACPA claim is based on its sole registered trademark for MUSCLE BEACH for goods and services, which is only for "athletic clothing, business consultation services, health club services." This claim does not rescue ThermoLife's case.

To be covered under the ACPA, ThermoLife would need to establish that the Muscle Beach Domains made use of its registered trademark, in commerce, in the same field of use as its registration. See Glow Indus., Inc. v. Lopez, 252 F.Supp. 2d. 962, 976 (C.D. Cal. 2002) (stating that trademark application relating to "skin soaps, bubble bath, skin lotions, skin moisturizers, and candles," even if registered, could not be invoked against use of mark "in connection with perfume or fragrance products."); see also Mattel, Inc. v. MCA Records, 28 F. Supp.2d 1120 (C.D. Cal. 1998) (trademarks for dolls, books purses, watches, bubble bath and clothing did not apply to

---

[4] ThermoLife misrepresents Automattic's arguments regarding the correct standard for in rem proceedings. Opposition at 18-19. What Automattic actually claims is that ThermoLife must have a registered trademark, or show a violation of 15 U.S.C. § 1125(a) or (c). See Cross Motion at 16-17. Further, ThermoLife claims that Denso Corp. v. Domain Name denso.com, Case No. 14–cv–01050 LB, 2014 WL 7208488, *3 (N.D.CA, Dec. 17, 2014) is the only case Automattic cites in support, but Automattic also cites to the statute and to Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 229 (4th Cir. 2002). See Cross Motion at 16-17. ThermoLife incorrectly conflates the standards for in rem jurisdiction and personal jurisdiction cases, and by the plain language of the statute, there are different requirements.

records, CDs or cassettes).  ThermoLife does not dispute in its Opposition that the webpages associated with the Muscle Beach Domains do not discuss or in any way relate to athletic clothing, business consultation services, or health club services.  As such, ThermoLife cannot base its ACPA claim on its only registered mark.

ThermoLife nevertheless claims that its *unregistered* marks are protectable under the ACPA because they are protected by 15 U.S.C. § 1125(a), which provides a cause of action for trademark infringement and false designation.[5]  ThermoLife, however, cannot state a claim for trademark infringement or false designation of origin under 15 U.S.C. § 1125(a).  To establish a claim for trademark infringement or false designation of origin under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. See Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007); Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 917 (9th Cir. 1980).  Under the Ninth Circuit's holding in Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 674 (2005), "the noncommercial use of a trademark as the domain name of a website – the subject of which is consumer commentary about the products and services represented by the mark – does not constitute infringement under the Lanham Act."  In looking at the commercial use element of a claim for trademark infringement, the court must determine if the use of the trademark was "in connection with a sale of goods or services." Id. at 677.  If it was not, then the use was "noncommercial" and did not violate the Lanham Act. Id.  A critical website that does not sell or advertise any competing goods or services does not satisfy the commercial use requirement. Id. at 677-78.

ThermoLife cannot state a claim under § 1125(a) because it cannot establish that the Muscle Beach Domains used the purported marks in commerce.  ThermoLife does not dispute that the Muscle Beach Domains have no commercial purpose whatsoever and are merely a forum for

---

[5] ThermoLife does not assert in its Opposition that it has a dilution claim under 15 U.S.C. § 1125(c).

public criticism of Ron Kramer and his work. ThermoLife's only basis for its claim that its marks are protectable under § 1125(a) is its allegation that "Ron Kramer has common law trademark rights in his name, RON KRAMER, which has been used in connection with the sale and advertising of dietary supplements for over sixteen years and is widely known and identified in the industry." See Opposition at 9. Ron Kramer's common law rights to his name do not bring the Muscle Beach Domains within the purview of the ACPA for the reasons discussed above. Moreover, ThermoLife does not allege any ownership rights to the common law trademark "Ron Kramer." The ACPA provides a cause of action for "the *owner* of a mark" and Ron Kramer is not a plaintiff in this action. As such, ThermoLife has no right to bring an ACPA claim for trademark infringement or false designation for the use of Ron Kramer's name on the Muscle Beach Domains.

### III. CONCLUSION

For all of the reasons set forth above and in Automattic's Opposition and Cross-Motion, ThermoLife's complaint fails to state a claim upon which relief can be granted. Accordingly, Automattic respectfully requests the Court grant Automattic's cross-motion for judgment on the pleadings. Since the defects in ThermoLife's Amended Complaint cannot be cured by amendment, Automattic further requests that the Court dismiss this case with prejudice and without leave to amend.

Dated: January 13, 2016                    PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

                                           By:  /s/ *Melinda M. Morton*
                                                Melinda M. Morton

                                                Attorney for Intervenor and Counter-Claimant
                                                AUTOMATTIC INC.